COLUMBUS SHOW CASE COMPANY, Appellant,

v.

CEE CONTRACTING, INC., Appellee.

[Cite as *Columbus Show Case Co. v. CEE Contracting, Inc.* (1992), 75 Ohio App.3d 559.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–279.

Decided July 2, 1992.

**560**

*Postlewaite & Smith, Jeffrey H. Jordan, Scott E. Smith* and *Charles C. Postlewaite,* for appellant.

*Robert J. Morje,* for appellee.

TYACK, Judge.

On September 11, 1991, Columbus Show Case Company filed suit against CEE Contracting, Inc. of West Islip, New York in the Court of Common Pleas of Franklin County, Ohio. After service was obtained, the president of CEE Contracting, Inc. ("CEE") sent a letter to the clerk of courts which indicated:

"In response to complaint filed against CEE Contracting, Inc. by Columbus Showcase [*sic*] Co. Case # 91CVH09–7373 in the Court of Common Pleas, Franklin County, Ohio we wish to answer as follows: * * * "

Columbus Show Case Company then filed a motion for a default judgment, since the letter did not constitute a responsive pleading on behalf of a corporation.

As a result, CEE obtained counsel, who filed a memorandum contra the motion for default judgment and a motion requesting an extension of the time to move or plead.

The trial judge signed a judgment entry overruling the motion for default judgment and granting CEE leave to move or plead. CEE then filed a motion to dismiss the case based upon a purported lack of personal jurisdiction. In support of the motion to dismiss, CEE filed an affidavit from the president of CEE which included:

"2. CEE Contracting, Inc., is a corporation chartered under the law of the State of New York with its principal and sole place of business located at 23 Sexton Drive, West Islip, New York 11795; and,

"3. CEE Contracting, Inc., maintains no physical presence of any kind in the State of Ohio and specifically does not maintain any office or other physical setting in the State of Ohio, nor does it retain any employees, independent sales agents, or other personnel in the State of Ohio; and,

"4. With respect to the contract subject of this action, all communication leading up to the contract was done by telephone or mail between defendant's office in the State of New York and the plaintiff's office in Columbus, Ohio; and,

"5. At no time did Affiant or any employee or agent of CEE Contracting, Inc., physically enter the State of Ohio with respect to this contract; and,

"6. To the extent that there were personal meetings between Affiant or other employees of CEE Contracting, Inc., and representative [*sic*] or employees or agents of Columbus Show Case Company, said personal meetings took place either in the State of New York or in the State of New Jersey, the situs of delivery of the goods subject of this contract; and,

"7. The subject matter of this contract were [*sic*] certain show cases, counters and store fixtures to be installed in certain Macy's–Lancome Stores located in Rockway [*sic*] and Tom's River, New Jersey; and,

"8. The documents attached hereto as Exhibit 'A1' and 'A2' are true and accurate copies of the quotation or bid telefaxed to defendant by plaintiff as offers to supply the subject materials; and

"9. Those documents attached hereto as Exhibit[s] 'B1' and 'B2' are true and accurate copies of the letters issued by defendant authorizing performance by plaintiff of the work proposed in Exhibits 'A1' and 'A2'; and,

"10. Defendant CEE Contracting, Inc., has never and does not currently do business in the State of Ohio; and,

"11. Defendant's only contact with the State of Ohio was the above-described communication with Columbus Show Case Company. * * * "

Exhibits "A1" and "A2" attached to the affidavit are, as indicated in the body of the affidavit, quotations for the installation of showcases in Macy's Department Stores in Rockaway, New Jersey and Tom's River, New Jersey, respectively. Exhibits "B1" and "B2" are authorizations to perform the work at the two stores. The authorizations were sent from New York to Ohio.

Columbus Show Case Company filed a memorandum contra the motion to dismiss. Attached to the memorandum was an affidavit signed by an employee of Columbus Show Case Company which indicated that CEE solicited the quotations from Columbus Show Case Company in a telephone call to a different employee of Columbus Show Case Company.

The trial court sustained the motion to dismiss via an entry which reiterated the court's earlier ruling on the motion for default judgment filed on behalf of Columbus Show Case Company. Columbus Show Case Company (hereinafter "appellant") has now appealed, assigning two errors for our consideration:

"I. The trial court committed an error prejudicial to appellant by overruling appellant's motion for default judgment.

"II. The trial court committed an error prejudicial to appellant by sustaining appellee's motion to dismiss for lack of personal jurisdiction."

■ The first assignment of error alleges that the trial court abused its discretion in failing to grant the motion for default judgment. Apparently, the president of CEE was unaware that he could not represent "his" corporation in an Ohio court of law and that his letter/answer did not constitute a pleading such as to put the issues in a posture of being contested. Upon learning of the problem, he then obtained counsel who properly opposed the motion for default judgment. Under the circumstances, the trial court appropriately overruled the motion for default judgment. Obviously, significant

issues are present in this action, not the least of them being the existence or lack of personal jurisdiction.

The first assignment of error is overruled.

The second assignment of error presents the difficult issue of personal jurisdiction. What quality and/or quantity of contacts with Ohio are necessary to permit a lawsuit against a "foreign" person or entity to go forward in Ohio's courts?

■ For guidance, this court turns to the recent Ohio Supreme Court ruling in *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477. According to *Kentucky Oaks Mall,* a two-part test should be utilized to determine if personal jurisdiction over an out-of-state defendant is available. First, it must be determined if the defendant's conduct falls within Ohio's "long-arm statute" or applicable civil rule, giving rise to personal jurisdiction, and then the court must determine whether a grant of jurisdiction to Ohio courts comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 75, 559 N.E.2d at 479–480.

The syllabus in *Kentucky Oaks Mall* states:

"A commercial nonresident lessee, for purposes of personal jurisdiction, is 'transacting any business' within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio. (R.C. 2307.-382[A][1] and Civ.R. 4.3[A][1], construed and applied.)"

R.C. 2307.382(A)(1) provides:

"A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"Transacting any business in this state[.]"

Civ.R. 4.3(A)(1) states:

"Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. 'Person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"Transacting any business in this state[.]"

Although the syllabus provides the law of the case in the *Kentucky Oaks Mall* case, we are not at liberty to ignore the body of the opinion, which states:

"It is clear that R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any* business in Ohio. 'Transact,' as defined by Black's Law Dictionary (5 Ed.1979) 1341, ' * * * means to *prosecute negotiations;* to carry on business; *to have dealings* * * *. The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word "contract" and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *.' " (Emphasis *sic.*) *Id.* at 75, 559 N.E.2d at 480.

In light of the *Kentucky Oaks Mall* case, the Supreme Court of Ohio's current interpretation of R.C. 2307.382 and Civ.R. 4.3 seems to be that the statute and rule are intended to reach to the full outer limits of litigation which is permissible consistent with federal due process of law limitations. Thus, *Kentucky Oaks Mall* implicitly overrules our earlier opinion in *Ohio State Tie & Timber v. Paris Lumber* (1982), 8 Ohio App.3d 236, 8 OBR 309, 456 N.E.2d 1309.

The most recent insight as to federal due process standards has been provided in *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528. In *Burger King,* at 464, 105 S.Ct. at 2177–2178, 85 L.Ed.2d at 535–536, Justice Brennan concluded, citing *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

" * * * [T]he constitutional touchstone remains whether the defendant *purposefully* established 'minimum contacts' in the forum State." (Emphasis added.)

*Burger King* goes on to note:

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with *'fair play and substantial justice.'* * * * Thus courts in 'appropriate case[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' * * * *These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts*

*than would otherwise be required.* * * * On the other hand, where a defendant who purposely has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. * * * " (Citations omitted; emphasis added.) *Id.,* 471 U.S. at 476–477, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543–544.

CEE's president, in his affidavit, asserts that no agent or employee from his company did "physically enter the State of Ohio with respect to this contract," nor does "CEE maintain a physical presence of any kind in Ohio."

■ Physical presence in a state is not the determinative factor as to whether an entity may be haled into court in that state. As the Supreme Court noted in *Burger King* at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543:

"Jurisdiction * * * may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposely directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. * * * " (Citations omitted; emphasis *sic.*)

■ CEE's president stipulates that communications leading up to the contract with appellant were accomplished by telephone or mail between its office in the state of New York and appellant's office in Columbus, Ohio. The mere fact that no employee or agent of CEE was "physically" present in Ohio during negotiations between parties to the case at bar, or that CEE has not maintained a "physical presence" at any time in Ohio, is not supportive of the trial court's dismissal of that action for lack of personal jurisdiction.

In the situation presented by the litigation between appellant and CEE, we note that three state court systems could be utilized. The actual showcases were installed in New Jersey and the New Jersey sales tax assessed is at least part of the damages alleged; so, New Jersey is one possible legal forum. CEE is located in New York, and apparently did the contracting from New York; so, New York is a potential forum. Finally, Ohio, whose involvement for purposes of this litigation is set forth in the affidavits before the trial court, presents the third forum.

Under the circumstances, litigation in Ohio is the most appropriate. CEE's home state of New York is the least appropriate since appellant has not been demonstrated to have any ongoing presence there and since none of the actual work contemplated in the contract for installation of the showcases has been shown to have occurred there. New Jersey would be a more appropriate forum than New York, since the actual installation of the showcases occurred there and since CEE apparently had ongoing business responsibilities there. However, neither of the parties is a resident there. Apparently some or all of the work incident to the manufacturing of the showcases was done in Ohio, and apparently the installation of the showcases was coordinated through Ohio. Finally, the fact that CEE initially approached appellant, as opposed to appellant approaching CEE, is significant in determining the most appropriate forum.

Therefore, we find that permitting this litigation to proceed in Ohio is consistent both with the most recent opinions of the Ohio Supreme Court in construing R.C. 2307.382 and Civ.R. 4.3, and with federal due process standards. As a result, the second assignment of error is sustained. The judgment of the trial court in ordering dismissal of the action is reversed and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PEGGY BRYANT, JJ., concur.