**PHARMED CORPORATION, Appellant,**

v.

**BIOLOGICS, INC., Appellee.**

[Cite as *Pharmed Corp. v. Biologics, Inc.* (1994), 97 Ohio App.3d 477.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66304.

Decided Oct. 3, 1994.

478

*Hildebrand, Williams & Farrell, John P. Hildebrand* and *Norman A. Fox, Jr.,* for appellant.

*Baker & Hostetler, E. Spencer Stewart* and *John P. Witri,* for appellee.

PATRICIA A. BLACKMON, Judge.

This is an appeal from the decision of the Cuyahoga County Court of Common Pleas granting a dismissal of plaintiff-appellant Pharmed Corporation's complaint for lack of personal jurisdiction over defendant-appellee Biologics, Inc. Pharmed timely appeals, raising the following assignment of error for our review:

"The trial court erred in granting the defendant's motion to dismiss for lack of personal jurisdiction."

Pharmed argues an Ohio court's assertion of jurisdiction over Biologics is consistent with R.C. 2307.382(A)(1) and Civ.R. 4.3(A) since Biologics engaged in "transacting any business in this state." Pharmed further argues asserting jurisdiction over Biologics does not offend fundamental notions of fair play and substantial justice as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. For the reasons that follow, we agree and reverse the judgment of the trial court.

Pharmed initiated the present action through the filing of its complaint alleging breach of contract. Pharmed alleged that in March 1993, Pharmed and Biologics entered into negotiations whereby Pharmed would purchase ten beds from Biologics at a price of $13,500 each, contingent on Pharmed securing a two-year simple-interest loan. Pharmed sent Biologics a deposit of $13,500 but was unable to secure the loan. Pharmed demanded return of the deposit, but Biologics refused, necessitating the instant action.

In an affidavit attached to Biologics's motion to dismiss for lack of personal jurisdiction, Mark Hagopian, President of Biologics, a Florida corporation, averred Biologics's principal place of business is in St. Petersburg, Florida and that Biologics owns no real estate in Ohio, nor does Biologics maintain any offices, production facilities or places of business in Ohio. Hagopian further averred that Biologics has no employees, sales representatives, or other agents in Ohio, nor has Biologics ever solicited business or derived substantial revenues from goods or services used or consumed in Ohio. In sum, it was averred, Pharmed has never engaged in any other persistent course of conduct in Ohio.

Concerning Biologics's contact with Pharmed, Hagopian averred an independent sales representative, Ron Carew, who does business out of Clearwater, Florida, brought the two parties together. Carew is neither an employee nor an agent of Biologics and has no authority to bind or act on behalf of Biologics. The

parties entered into said contract for the sale of said beds after negotiations, which took place primarily by mail, telephone, and facsimile. Hagopian acknowledged that on one occasion, he went to Ohio to view Pharmed's facilities, but maintained no other representative of Biologics went to Ohio in connection with this matter. All other meetings between the parties occurred in Florida.

The beds were to be delivered, according to standard terms of sale, F.O.B. at Biologics's place of business in Florida. However, Pharmed had not completed the purchase of the beds and no beds have been delivered.

In opposition to Biologics's motion, Elias Coury, Vice President of Pharmed, substantially corroborated Hagopian's affidavit concerning the negotiations involved in the contract. Coury added Pharmed was interested in purchasing the beds for resale in Ohio and Biologics was aware these beds were to be used within Ohio. Additionally, a signed memorandum of the agreement was attached to Coury's affidavit. The memorandum of agreement indicates Biologics agreed to a repurchase option on five of the beds to be exercised one year after consummation of the contract should Pharmed be unable to resell the beds in Ohio. A plaintiff has the burden of establishing the trial court has personal jurisdiction over a defendant once the defendant timely challenges the court's jurisdiction. *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 308, 14 OBR 371, 373, 471 N.E.2d 165, 167–168; *L.B. Cleveland, Inc. v. Metal Purchasing Co., Inc.* (Feb. 15, 1990), Cuyahoga App. No. 58163, unreported, 1990 WL 14117. Where the trial court determines jurisdiction without an evidentiary hearing, as in the present case, the trial court must (1) view the allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff, and (2) resolve all reasonable competing inferences in favor of the plaintiff. *Giachetti, supra*, 14 Ohio App.3d at 307, 14 OBR at 372, 471 N.E.2d at 166–168. In such a case, the plaintiff need only make a prima facie showing of personal jurisdiction to overcome a motion to dismiss. *Id.*

Recently, in *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 184–185, 624 N.E.2d 1048, 1051–52, the Ohio Supreme Court noted:

"When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." (Footnote omitted.) See, also, *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477.

Ohio's "long-arm statute," R.C. 2307.382, provides:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state[.]"

Civ.R. 4.3(A)(1) further provides:

"When Service Permitted. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. 'Person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state[.]"

█ The "long-arm statute" and foregoing Civil Rule are consistent and, in fact, complement each other. *Kentucky Oaks, supra,* 53 Ohio St.3d at 75, 559 N.E.2d 477. Each is very broadly worded and permits jurisdiction over nonresident defendants who are transacting any business in Ohio. *Id.* Transact " ' * * * means to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *.' " *Id.,* quoting from Black's Law Dictionary (5 ed. 1979) 1341.

█ In determining whether a nonresident defendant's activities amount to "transacting any business" in Ohio, courts must review the facts of each case on a case-by-case basis. *U.S. Sprint, supra,* 68 Ohio St.3d at 185, 624 N.E.2d at 1052. In *Kentucky Oaks,* the Ohio Supreme Court held that the following conduct constitutes "transacting any business" within the state:

"In the case at bar, Mitchell's negotiated the lease by telephone contact to Ohio with an Ohio-based limited partnership. Mitchell's intentionally and voluntarily entered into a ten-year contract by signing the document in Georgia and mailing it to Ohio. The document creates ongoing duties and obligations for the life of the contract. Undoubtedly, both parties sought the benefit of each other's bargain in hopes of realizing a pecuniary gain. The fact that Mitchell's maintained no physical presence in Ohio does not preclude a finding that it transacted business in this state." *Id.,* 53 Ohio St.3d at 75–76, 624 N.E.2d at 480.

Significantly, the lease in *Kentucky Oaks* concerned property located in Kentucky but owned by the Ohio-based limited partnership.

In addition to *Kentucky Oaks*, we believe *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369, 612 N.E.2d 472, is analogous to the case *sub judice*. In *Hammill*, the Lucas County Court of Appeals found that the following conduct amounts to "transacting any business" in Ohio:

"In the case at bar, QRP negotiated the contract by telephone contact to Ohio with an Ohio-based corporation. QRP intentionally and voluntarily entered into a contract by issuing the purchase order in California and mailing it to Ohio. The document creates ongoing duties and obligations for the life of the contract. Undoubtedly, both parties sought the benefit of each other's bargains. The fact that QRP maintained no physical presence in Ohio for the initial contract does not preclude a finding that it transacted business in this state." *Id.* at 374, 612 N.E.2d at 475.

Finally, we also rely on *Columbus Show Case Co. v. CEE Contracting, Inc.* (1992), 75 Ohio App.3d 559, 599 N.E.2d 881, in reaching our decision *sub judice*. In *Columbus Show Case*, the Franklin County Court of Appeals found the following conduct sufficient to constitute "transacting any business" within Ohio:

"CEE's president stipulates that communications leading up to the contract with appellant were accomplished by telephone or mail between its office in the state of New York and appellant's office in Columbus, Ohio. The mere fact that no employee or agent of CEE was 'physically' present in Ohio during negotiations between parties to the case at bar, or that CEE has not maintained a 'physical presence' at any time in Ohio, is not supportive of the trial court's dismissal of that action for lack of personal jurisdiction.

"In the situation presented by the litigation between appellant and CEE, we note that three state court systems could be utilized. The actual showcases were installed in New Jersey and the New Jersey sales tax assessed is at least part of the damages alleged; so, New Jersey is one possible legal forum. CEE is located in New York, and apparently did the contracting from New York; so, New York is a potential forum. Finally, Ohio, whose involvement for purposes of this litigation is set forth in the affidavits before the trial court, presents the third forum.

"Under the circumstances, litigation in Ohio is the most appropriate. CEE's home state of New York is the least appropriate since appellant has not been demonstrated to have any ongoing presence there and since none of the actual work contemplated in the contract for installation of the showcases * * * occurred there and since CEE apparently had ongoing business responsibilities there. However, neither of the parties is a resident there. Apparently some or all of the work incident to the manufacturing of the showcases was done in Ohio, and apparently the installation of the showcases was coordinated through Ohio.

Finally, the fact that CEE initially approached appellant, as opposed to appellant approaching CEE, is significant in determining the most appropriate forum."

After a thorough review of the record and the foregoing case law, we conclude Biologics's conduct in negotiating, and entering, a contract for the sale of the beds in question amounts to transacting business within the state of Ohio.

We initially note that the mere fact Biologics maintains no physical presence in Ohio is not dispositive. Biologics acknowledged it has derived some revenue from goods or services used or consumed in Ohio and has engaged in some conduct in Ohio, although it is said Biologics has not derived substantial revenues or engaged in a persistent course of conduct. More important, it is undisputed that Biologics, in Florida, engaged in negotiations with Pharmed, in Ohio, by mail, telephone and facsimile. Further, Mr. Hagopian, Biologics's president, acknowledged that on one occasion, he went to Ohio to view Pharmed's facilities. The parties, by memorandum of agreement and conduct, established a contract with continuing and ongoing duties and obligations. The memorandum of agreement reflects Biologics agreed to a repurchase option on five of the beds should Pharmed be unable to resell them in Ohio. Finally, we assume, for purposes of jurisdiction, that Biologics's conduct in refusing to return the $13,500 deposit harmed Pharmed, an Ohio-based corporation.

Accordingly, pursuant to R.C. 2307.282(A)(1) and Civ.R. 4.3(A)(1), we conclude the trial court has personal jurisdiction over Biologics.

Next, we must decide whether the trial court can exercise personal jurisdiction over Pharmed without offending the dictates of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. A state may assert personal jurisdiction over a nonresident defendant if the nonresident defendant has "certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102; *Kentucky Oaks Mall, supra*, 53 Ohio St.3d at 76, 559 N.E.2d at 480.

In *Kentucky Oaks*, the Ohio Supreme Court, quoting favorably from Justice Brennan's majority opinion in *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, noted at 53 Ohio St.3d at 76–77, 559 N.E.2d at 481:

"Justice Brennan, in writing for the majority of the court, reviewed prior cases and concluded that ' * * * the constitutional touchstone remains whether the defendant *purposefully* established "minimum contacts" in the forum State. *International Shoe Co. v. Washington, supra* [326 U.S.] at 316 [66 S.Ct. at 158, 90 L.Ed. at 102].' (Emphasis added.) *Id.* [471 U.S.] at 474 [105 S.Ct. at 2183, 85

L.Ed.2d at 542]. The nonresident defendant has purposefully established minimum contacts ' * * * where the defendant "deliberately" has engaged in significant activities within a State * * * *or* has created *"continuing obligations"* between himself and residents of the forum * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well.' (Citations omitted and emphasis added in part.) *Id.* at 475–476 [105 S.Ct. at 2184, 85 L.Ed.2d at 542–543]. Furthermore, minimum contacts are satisfied when the defendant foreseeably causes injury in the forum state if ' " * * * the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." * * *' *Id.* at 474 [105 S.Ct. at 2183, 85 L.Ed.2d at 542] (quoting *World–Wide Volkswagen Corp. v. Woodson* [1980], 444 U.S. 286, 297 [100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501] ).

"Justice Brennan also noted that the question of whether personal jurisdiction exists does not end with a finding that the nonresident defendant has purposely established minimum contacts and stated:

" 'Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with *"fair play and substantial justice."* * * * Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." * * * *These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.* * * * On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' (Citations omitted and emphasis added.) *Id.* [471 U.S.] at 476–477 [105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543]."

Applying the foregoing guidelines to the case *sub judice,* we conclude that Biologics has purposely established sufficient minimum contacts through its activities and conduct and has foreseeably caused injury to an Ohio corporation to have reasonably anticipated being haled into court in Ohio. Accordingly, it is evident to us that assertion of personal jurisdiction over Biologics by an Ohio court comports with fair play and substantial justice as required by the Fourteenth Amendment to the Constitution.

Biologics conducted significant activities within the state of Ohio by negotiating with an Ohio-based corporation by phone, facsimile and mail for the sale of beds which, Biologics knew, were to be resold by Pharmed within Ohio. Biologics further established continuing obligations between itself and Pharmed by agreeing to a repurchase option of five of the beds should Pharmed be unable to resell them. Additionally, by accepting a down payment of $13,500 on the beds and failing to return it after Pharmed was unable to obtain the contingent financing, we assume Biologics has foreseeably caused injury to an Ohio resident such that it should have reasonably anticipated being haled into an Ohio court.

Finally, the requirements of fair play and substantial justice are served by assertion of personal jurisdiction over Biologics in the case *sub judice*. It has long been recognized that modern transportation and communications have made it much less burdensome for a party to defend a lawsuit in a state where he engages in economic activity. *Kentucky Oaks, supra,* 53 Ohio St.3d at 76, 559 N.E.2d at 480, citing *McGee v. Internatl. Life Ins. Co.* (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. We also note that Biologics has failed to demonstrate that the burden of defending this lawsuit in Ohio is excessive.

Ohio courts also have an interest in adjudicating the dispute, and Pharmed has an interest in obtaining the relief requested. Ohio courts have recognized the state's interest in resolving suits brought by one of its residents against a nonresident defendant over conduct which has occurred or partially occurred within the state. *Kentucky Oaks, supra,* citing *Wright Internatl. Express, Inc. v. Roger Dean Chevrolet, Inc.* (S.D.Ohio 1988), 689 F.Supp. 788; see, also, *U.S. Sprint, supra; L.B. Cleveland, Inc., supra; Yauger v. Hamilton Sorter Co., Inc.* (Oct. 18, 1993), Butler App. No. CA93–02–030, unreported 1993 WL 414183; *CompuServe, Inc. v. Trionfo* (1993), 91 Ohio App.3d 157, 631 N.E.2d 1120, and *Reliance Elec. Co. v. Kock's Crane & Marine Co.* (June 27, 1985), Cuyahoga App. No. 48721, unreported, 1985 WL 6892.

Finally, we note that between Ohio and Florida, the two states with potential jurisdiction over the controversy *sub judice,* we believe Ohio possesses greater interest in that the beds were to be resold in Ohio and Biologics maintained a repurchase option should Pharmed be unable to resell the beds in Ohio.

Pharmed's sole assignment of error is, therefore, sustained, and the judgment of the common pleas court is reversed.

This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PORTER and WEAVER, JJ., concur.