MICRO EXPERTS, INC., Appellant,

v.

EDISON TECHNOLOGIES, INC. et al., Appellees.

[Cite as *Micro Experts, Inc. v. Edison Technologies, Inc.* (1997), 122 Ohio App.3d 394.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71822.

Decided Aug. 18, 1997.

*Kraus & Kraus* and *Keith R. Kraus,* for appellant.

*Brouse & McDowell* and *Linda B. Kersker,* for appellee First National Bank of Ohio.

*Hahn, Loeser & Parks* and *Neil K. Evans,* for appellee Wells Fargo Bank.

Rocco, Judge.

In this action to recover funds paid out from a checking account, plaintiff-appellant Micro Experts, Inc. appeals from two trial court orders that had the

effect of determining the action in appellees' favor. The first order granted third-party defendant-appellee Wells Fargo Bank's ("Wells Fargo's") motion to dismiss it from the action for lack of personal jurisdiction. The second order granted defendant-appellee First National Bank of Ohio's ("First National's") motion for summary judgment. This court has reviewed the record and determines that the trial court's actions were appropriate; therefore, its orders are affirmed.

Appellant is a company in the business of selling computers. In January 1994, it purchased some equipment from one of its suppliers, Edison Technologies, Inc. ("Edison"). To pay for the merchandise, appellant's vice-president of finance, Lolita Iskiev, issued a total of four company checks payable to Edison. Three of them, numbered "2525," "2526," and "2527," were in the amount of $50,000. These checks were all handwritten and were postdated "2–23–94," "2–28–94," and "3–5–94," respectively.

After the arrival of Edison's merchandise, appellant experienced problems with it. Therefore, on January 19, 1994, appellant notified its banking institution, appellee First National, that it wanted to stop payment on the four checks issued to Edison. First National's employee recorded appellant's stop payment order information on a "stop payment card." The information was then placed into the bank's central computer system, where it remained for one hundred eighty days. Appellant then negotiated with Edison regarding its dissatisfaction with the order.

In March 1994, appellant resolved its difficulties with Edison over the equipment. Pursuant to their agreement, appellant issued a new check to cover the cost of the replacements. Edison assured appellant that the earlier checks had been voided, sending photocopies of them that indicated that they had been marked with that notation. However, appellant failed to obtain the originals of the earlier checks.

In late December, Edison deposited the earlier checks from appellant into its banking account with appellee Wells Fargo in Beverly Hills, California. Check numbers 2526 and 2527 at that time bore the dates "12–23–94" and "12–28–94."

Wells Fargo forwarded the checks for collection through the Federal Reserve Bank system. Since the stop-payment order had expired, upon receipt of the checks, First National paid check number 2525 on December 29, 1995 and check number 2526 on January 4, 1995 from appellant's account. First National also initially paid check number 2527 from appellant's account; however, it later recredited appellant's account for the amount, apparently because the check bore

an obviously "stale" date.[1]

On March 28, 1995, appellant instituted an action against Edison and First National in the Cuyahoga County Court of Common Pleas. Appellant alleged Edison had "maliciously altered" the dates on check numbers 2525 and 2526 and appropriated the funds unlawfully.

As to First National, appellant alleged in its complaint that First National had breached its duty of "ordinary care" by "negligently" paying the checks "under circumstances in which it knew or should have known" that the checks had been "materially and fraudulently altered." Appellant further alleged that First National breached its duty of "ordinary care" by paying the checks "inasmuch as absent the material alteration" the checks were "stale and should not have been paid."

On May 4, 1995, First National filed an answer and a cross-claim against Edison for indemnity. Listed among First National's defenses was the assertion that appellant's claims were barred both by its failure to exercise ordinary care that "substantially contributed" to the alterations on the checks and by its failure to renew the stop-payment order. First National further asserted that it had conducted itself in accordance with reasonable commercial standards.

On the same day, First National also filed a third-party complaint against Wells Fargo, alleging breach of warranties pursuant to R.C. 1304.18. First National asserted that the trial court's jurisdiction over Wells Fargo was appropriate because its presentment to First National of the checks constituted the transacting of business in Ohio.

On May 23, 1995, appellant filed a motion for a default judgment against Edison. The motion was set for hearing in August 1995.

On June 30, 1995, without waiving the issue of personal jurisdiction, Wells Fargo filed an answer to the third-party complaint and a cross-claim against Edison for indemnification.

On September 15, 1995, the trial court granted appellant's motion for a default judgment against Edison. Subsequently, on October 12, 1995, with the trial court's permission, appellant filed a cross-claim against Wells Fargo. Appellant alleged, *inter alia*, the following: (1) Wells Fargo had no right to enforce payment on the checks; (2) Wells Fargo had notice that the checks were altered; and (3) Wells Fargo breached transfer and presentment warranties in transfer-

---

**1.** Deposition testimony introduced in support of First National's motion for summary judgment established that in the banking industry, after one hundred eighty days a date is considered "stale."

ring the checks. In the pleading, appellant made no assertion that the trial court had personal jurisdiction over Wells Fargo.

On December 8, 1995, Wells Fargo filed an answer to appellant's cross-claim, once again without waiving jurisdiction. Then, on December 14, 1995, Wells Fargo filed a formal motion to dismiss both First National's third-party complaint and appellant's cross-claim against it on the basis that the trial court lacked personal jurisdiction over Wells Fargo. The motion was supported by a brief and the affidavit of Mark O. Donohue, vice-president of the company.

In his affidavit, Donohue stated that (1) Wells Fargo had its principal place of business in California with no offices, retail branches, or employees located in Ohio; (2) Edison's checking account was in California; (3) Edison's checks were transferred through the Federal Reserve Bank System for collection and, therefore, Wells Fargo made no direct presentment of them to First National; (4) Wells Fargo had no correspondent relationship with First National; and (5) Wells Fargo neither transacted business in Ohio with respect to the matter nor caused injury in Ohio by breaching any warranty with respect to the sale of goods.

Subsequently, both First National and appellant filed responses to the motion with attached exhibits. The exhibits indicated that Wells Fargo in the past had filed financial statements in Ohio. Eventually, on May 22, 1996, the trial court granted Wells Fargo's motion and dismissed it from the action.

On November 15, 1996, First National filed a motion for summary judgment with respect to the remaining claims in the case. First National argued that appellant could not establish that it had been negligent, since appellant had failed to renew the stop-payment order on the checks and since the checks had been paid in good faith.

First National attached to its brief in support of the motion its responses to appellant's first request for admissions and interrogatories and the deposition testimony of the following: (1) Paulette Grizer, First National's fraud manager; (2) Igor Iskiev, appellant's president; and (3) Lolita Iskiev, appellant's vice-president of finance.

On November 27, 1996, appellant filed a brief in opposition to First National's motion for summary judgment. Appellant argued that by virtue of the original stop payment order, First National had actual notice that the checks had been altered by the time of presentment. Appellant also argued that an issue remained with regard to the allocation of negligence between the parties. Appellant attached no evidentiary material to its brief. In response, First National filed a reply brief.

Ultimately, the trial court granted First National's motion for summary judgment. It is from this final order that appellant filed its timely appeal, presenting two assignments of error for review.

Appellant's first assignment of error states:

"The trial court committed prejudicial and reversible error by dismissing all claims against third–party defendant–appellee Wells Fargo Bank for lack of personal jurisdiction."

Appellant argues that Wells Fargo's activities in this case with regard to the checks indicate that it has sufficient minimum contacts with Ohio to justify the trial court's exercise of personal jurisdiction over it; thus, the trial court improperly granted its motion to dismiss.

■ It must first be noted that in its cross-claim against Wells Fargo, appellant failed to make any allegation concerning the trial court's jurisdiction over Wells Fargo, personal or otherwise. In fact, only First National averred that Wells Fargo "transacted business" in Ohio. On this basis alone, the trial court was justified in dismissing appellant's cross-claim against Wells Fargo. *Jurko v. Jobs Europe Agency* (1975), 43 Ohio App.2d 79, 72 O.O.2d 287, 334 N.E.2d 478.

■ Furthermore, in order to invoke the *in personam* jurisdiction of the trial court over a foreign corporation, it is the plaintiff's responsibility to demonstrate that Ohio's "long-arm" statute and Civ.R. 4.3 *confer* jurisdiction. *Universal Coach v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 287, 629 N.E.2d 28, 30; *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 308, 14 OBR 371, 373, 471 N.E.2d 165, 167–168.

■ Thus, although the trial court is required both to view the allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff and to resolve all competing inferences in plaintiff's favor, plaintiff must make a *prima facie* showing of personal jurisdiction to overcome a motion to dismiss. *Pharmed Corp. v. Biologics, Inc.* (1994), 97 Ohio App.3d 477, 646 N.E.2d 1167; *Giachetti v. Holmes, supra.*

■ R.C. 2307.382 sets forth the "minimum contacts" required in order to vest the trial court with jurisdiction over a foreign corporation:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"*(1) Transacting any business in this state*[.]" (Emphasis added.)

In addition, Civ.R. 4.3(A) describes the entities subject to long-arm jurisdiction and service of process as follows:

"(A) When service permitted. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state * * *. 'Person' includes * * * a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has *caused* an event to occur out of which the claim that is the subject of the complaint arose, *from the person's:*

"(1) *Transacting any business in this state*[.]" (Emphasis added.)

In this case, as previously mentioned, appellant alleged only in its brief in opposition to Wells Fargo's motion to dismiss that the trial court had personal jurisdiction over the California company due to its "transacting business" in Ohio.[2] Moreover, appellant supported this allegation with no evidentiary material. *Universal Coach v. New York City Transit Auth., supra;* cf. *Giachetti v. Holmes, supra.*

Wells Fargo, on the other hand, provided the affidavit of its vice-president in support of its motion to dismiss. It is clear from his statements that Wells Fargo's only acts with respect to the checks were to accept them from their owner, Edison, and to place them into normal federal banking channels. By these acts, the Federal Reserve Bank, rather than Wells Fargo, became the "agent" of Edison. Section 210.6(a)(1), Title 12, C.F.R.

Appellant argues that Wells Fargo's mere placement of the checks into the banking system for ultimate presentment to an Ohio bank constitutes "transacting business" in Ohio because it derived a benefit from the action. However, Wells Fargo must also actively *participate* in the action in order to confer jurisdiction. *Pharmed, supra,* 97 Ohio App.3d at 483, 646 N.E.2d at 1171; *U.S. Sprint Communications Co. Limited Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 185–186, 624 N.E.2d 1048, 1052–1053; *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75–76, 559 N.E.2d 477, 479–481; *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369, 374, 612 N.E.2d 472, 475; *Columbus Show Case Co. v. CEE Contracting, Inc.* (1992), 75 Ohio App.3d 559, 599 N.E.2d 881.

Moreover, between Wells Fargo and First National there was neither any direct contact nor any contract to provide services. See, *e.g., Ex Parte South-*

---

**2.** In a footnote in its appellate brief, appellant asserts that Civ.R. 4.3(A)(4) also applies to confer jurisdiction over Wells Fargo; however, this "argument" also was made only in a footnote in the trial court. Under these circumstances, this court declines to address this argument on appeal. Cf. *Jackson v. State Street Bank & Trust Co.* (1996), 110 Ohio App.3d 388, 674 N.E.2d 706.

*Trust Bank v. Empire Corp. Fed. Credit Union* (Ala. 1995), 668 So.2d 552; cf. *Hammill Mfg. Co. v. Quality Rubber Prod., Inc., supra.*

Numerous decisions stand for the proposition that the mere forwarding of a check through the federal bank system by an otherwise foreign bank is an insufficient basis upon which to permit the exercise of personal jurisdiction. See, e.g., *Sears Bank & Trust Co. v. Luckman* (1978), 61 Ill.App.3d 260, 18 Ill.Dec. 520, 377 N.E.2d 1156; *Dempster Plaza State Bank v. Valley Bank of Nevada* (N.D.Ill. 1980), No. 80C2611, unreported; *E.I.C., Inc. v. Bank of Virginia* (1980), 108 Cal.App.3d 148, 166 Cal.Rptr. 317; *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.* (C.A. 11, 1983), 701 F.2d 889; *First United Bank of Mississippi v. First Natl. Bank of Atlanta* (1986), 255 Ga. 505, 340 S.E.2d 597. See, also, *Washington Petroleum & Supply Co. v. Girard Bank* (M.D.Pa.1983), 629 F.Supp. 1224; cf. *Jackson v. State Street Bank & Trust Co.* (1996), 110 Ohio App.3d 388, 674 N.E.2d 706.

Since the evidentiary materials before the trial court in this case revealed that Wells Fargo had failed to transact any business in Ohio within the meaning of R.C. 2307.382 and Civ.R. 4.3(A)(1), the trial court properly granted Wells Fargo's motion to dismiss for lack of personal jurisdiction. *Mellott v. Dico Co.* (1982), 7 Ohio App.3d 52, 7 OBR 64, 454 N.E.2d 146; *Speck v. Mut. Serv. Life Ins. Co.* (1990), 65 Ohio App.3d 812, 585 N.E.2d 509; *Universal Coach v. New York City Transit Auth., supra.*

Accordingly, appellant's first assignment of error is overruled.

Appellant's second assignment of error states:

"The trial court committed prejudicial and reversible error by granting the motion for summary judgment of defendant–appellee First National Bank of Ohio."

Appellant argues that material issues of fact remain as to whether First National was negligent when it paid "altered, stale checks"; therefore, summary judgment for First National was improper. This court disagrees.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274, the Supreme Court outlined the test to be applied in order to determine whether summary judgment is appropriate for the moving party:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. * * * [T]he moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which

affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis in original; underscoring added.)

Appellant contends that the evidence was sufficient to create an issue of fact concerning First National's negligence pursuant to R.C. 1303.50(C).

R.C. 1303.50 provides:

"(A) 'Alteration' means either of the following:

"(1) An unauthorized change in an instrument that purports to modify in any respect the obligation of a party.

"(2) *An unauthorized addition* of words or *numbers* or other change to an incomplete instrument relating to the obligation of a party.

"(B) *Except as provided in division (C)* of this section, an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, *and the instrument may be enforced according to its original terms.*

"(C) A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, *in good faith and without notice of the alteration, may enforce rights* with respect to the instrument * * * if the incomplete instrument was altered by unauthorized completion, according to its terms as completed." (Emphasis added.)

Thus, pursuant to this statute, a payor bank may charge a customer's account according to the terms of a check if the bank has no notice that the check has been altered and pays it in good faith. The term "good faith" is defined as "honesty in fact in the conduct or transaction." R.C. 1301.01(S).

In this case, First National provided deposition testimony that proved that it lacked notice of Edison's alteration of appellant's checks. Paulette Gizer, its fraud manager, testified that (1) because they were in an amount over $10,000, the checks had been visually inspected for "something obviously wrong with them"; (2) only number 2527, which bore a clearly "stale date," had to be recredited to appellant's account; and (3) the two other checks would not have

been questioned as being altered because the ink used by Edison to alter them was not "notably different" from that used by appellant to make them.

Her testimony was supported by that of Lolita Iskiev, appellant's own vice-president of finance, the writer of the checks. Iskiev admitted that she could not determine merely by "looking at" the checks that the date had been altered on them.

Moreover, First National proved that it acted within normal commercial banking procedures with respect to the checks. Grizer testified that appellant's stop payment order on them was duly entered into the bank's computer. After one hundred eighty days, however, the information was automatically purged. Thus, without appellant's written renewal of the order, First National would have no notice either that appellant wished the checks to remain subject to such an order or that the checks retained their previous dates of issue.

The foregoing is in accordance with the requirements of R.C. 1304.32,[3] which states:

"(A) A customer * * * may stop payment of any item drawn on the customer's account or close the account by an order to the bank *describing the item* or account with reasonable certainty received at a time and in a manner that affords the bank *a reasonable opportunity to act on it* * * *.

"(B) A stop payment order is *effective for six months, but it lapses* after fourteen calender days if the original order was oral and was not confirmed in writing within that period. *A stop payment order may be renewed for additional six-month periods by a writing given to the bank within a period during which the stop payment order is effective.*

"(C) The burden of establishing the fact and amount of loss resulting from the payment of an item *contrary to a stop payment order* or order to close an account *is on the customer.*" (Emphasis added.)

It is obvious from the statute and testimony that, despite appellant's speculations to the contrary, pursuant to accepted banking practices, First National was placed under no duty to (1) notify its customers that stop payment orders expire automatically, (2) educate its customers as to proper and safe check preparation, (3) closely scrutinize incoming checks subject to stop payment orders for a period exceeding six months, and (4) discover the alteration on the checks. However, appellant was under a duty to renew the stop-payment order. Thus,

---

**3.** This new version of this statute went into effect on August 19, 1994, prior to First National's payment of the checks.

there were no genuine issues regarding these facts. See, *e.g.*, *Buckeye Union Ins. Co. v. Consol. Stores Corp.* (1990), 68 Ohio App.3d 19, 22, 587 N.E.2d 391, 393; *RPM Pizza, Inc. v. Bank One Cambridge* (E.D.Mich.1994), 869 F.Supp. 517.

Appellant further argues that R.C. 1303.49 applies to prevent an order of summary judgment in this case.

R.C. 1303.49 states:

"(A) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

"(B) Under division (A) of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded under division (A) of this section from asserting an alteration or forgery and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

"(C) Under division (A) of this section, the burden of proving that a failure to exercise ordinary care contributed to an alteration of an instrument or to the making of a forged signature on an instrument is on the person asserting the preclusion. Under division (B) of this section, the burden of proving that a failure to exercise ordinary care in paying or taking an instrument substantially contributed to loss is on the person precluded."

Ordinarily, this statute is used as a defense, rather than in support of a claim. *Fifth Third Bank of Toledo, N.A. v. Dziersk* (C.A.6, 1993), 12 F.3d 600; see, also, *Atlantic Mut. Ins. v. Provident Bank* (1996), 79 Ohio Misc.2d 5, 669 N.E.2d 901.

Assuming *arguendo* that the statute may be raised by appellant, it cannot serve appellant until appellant first meets the test of subdivision (C), that is, since appellant is asserting the preclusion, it has the initial burden to demonstrate that First National failed to exercise ordinary care in paying or taking the checks. Appellant cannot meet this test. Rather, the evidence presented by First National proves that it exercised ordinary care in relation to the checks.

Appellant's stop-payment order, issued January 19, 1994, expired after one hundred eighty days. It was automatically purged from First National's computer system. Appellant failed to renew the order. Edison's alterations of the two

checks were not obvious. When the checks were presented, because they were in an amount over $10,000, the checks were visually inspected by one of First National's employees. The signatures on the checks were genuine and the checks appeared to be recently issued. Therefore, in December 1994 and January 1995, the two checks were honored and the amounts were deducted from appellant's account.

Inasmuch as First National's evidence demonstrated that its actions were in accord with reasonable commercial banking practices as set forth in Ohio's statutes and the Uniform Commercial Code, and appellant provided no evidence to the contrary, appellant's attempt to assert R.C. 1303.49 in opposition to First National's motion for summary judgment is futile. Cf. *Golden Years Nursing Home v. Gabbard* (1994), 94 Ohio App.3d 430, 640 N.E.2d 1186.

First National provided evidence in support of its motion for summary judgment identifying for the trial court the portions of the record that demonstrated the absence of a genuine issue of material fact as to appellant's claims of negligence. In the face of this, appellant failed to set forth *specific facts* showing that there was an issue for trial; instead, appellant set forth only speculations in its brief in opposition to the motion. Under these circumstances, the trial court did not err in granting First National's motion for summary judgment. *Dresher v. Burt; RPM Pizza, Inc. v. Bank One Cambridge, supra.*

Accordingly, appellant's second assignment of error is also overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PATRICIA A. BLACKMON, P.J., and SPELLACY, J., concur.