[Cite as *Mayfran v. Eco-Modity*, 2019-Ohio-4350.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MAYFRAN INTERNATIONAL,  :
INCORPORATED,

:

Plaintiff-Appellant,  :  No. 107959

:

v.  :

ECO-MODITY, L.L.C.,  :

Defendant-Appellee.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:**  October 24, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-895669

---

### *Appearances:*

Ulmer & Berne, L.L.P., Lawrence D. Pollack, and Richard
G. Hardy, *for appellant.*

Tucker Ellis, L.L.P., Laura Kingsley Hong, and Brendan P.
Kelley, *for appellee.*


MICHELLE J. SHEEHAN, J.:

{¶ 1}  Mayfran International Incorporated ("Mayfran" hereafter) appeals

from the trial court's judgment granting the motion to dismiss for lack of personal

jurisdiction filed by Eco-Modity, L.L.C., d.b.a. Blue Marble Material, ("Blue Marble" hereafter). Mayfran raises the following assignment of error for our review:

1. The trial court erred in dismissing this case for lack of personal jurisdiction holding that exercising jurisdiction over defendant Eco-Modity L.L.C. would violate defendant's due process rights.

{¶ 2} After a de novo review, we find merit to the appeal and reverse the trial court's judgment granting Blue Marble's motion to dismiss for lack of personal jurisdiction. As we explain in the following, Mayfran established a prima facie showing that Ohio's long-arm statute confers upon the trial court personal jurisdiction over Blue Marble and its exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

**Substantive Facts and Procedural History**

{¶ 3} The facts in this case are largely undisputed. Blue Marble is a California business operating several mattress recycling facilities in that state. Mayfran is a process engineering company in Ohio. It designs, manufactures, and sells a variety of industrial products, including recycling equipment.

{¶ 4} In June, 2015, Tchad Robinson, the president of Blue Marble, travelled to Las Vegas to attend Waste Expo, a trade show. While there, he met Kim Jaker, president of H. West Equipment, a company selling recycling equipment and a distributor of Mayfran equipment. Robinson talked to Jaker about Blue Marble's plan to automate its recycling facilities.

{¶ 5} Several weeks after the trade show, Jaker told Robinson about Mayfran and suggested Mayfran may be able to help Blue Marble with automating

its recycling process. In August 2015, Jaker and a team of Mayfran representatives went to Blue Marble's headquarter in Commerce, California. They presented a proposal for Mayfran to design and install a significant part of the recycling process at Blue Marble's facilities.

{¶ 6} From October 2015 to May 2017, the two companies engaged in contract negotiations, negotiated primarily by way of email communications and telephone calls. Robinson visited Mayfran once, in 2017. As a result of the extensive negotiations over the course of 19 months, Blue Marble and Mayfran executed a total of ten contracts totaling $8 million. Under the contracts, Mayfran would design and manufacture for Blue Marble an automated recycling system, consisting of 50 pieces of equipment, to be installed at Blue Marble's recycling facilities in California. Among the 50 pieces of equipment, many were custom-designed for Blue Marble and manufactured in Ohio. In addition to the design, manufacturing, and installation of the equipment, Mayfran was involved in the concrete and electrical work at one of Blue Marble's facilities.

{¶ 7} Subsequently, disputes arose regarding the performance of the automated system and Blue Marble's failure to pay under the contracts. In April 2018, Mayfran filed a complaint against Blue Marble in the Cuyahoga County Court of Common Pleas, raising claims of breach of contract and unjust enrichment and

seeking more than $6 million in unpaid contract price.[1]  Blue Marble filed a motion to dismiss for lack of personal jurisdiction.  Without a hearing, the trial court granted the motion, holding that although Ohio's long-arm statute confers personal jurisdiction over Blue Marble, exercising jurisdiction in this case would offend the notions of fair play and substantial justice in violation of the nonresident defendant's due process rights.

**Standard of Review**

{¶ 8}  We review de novo the trial court's decision granting a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction.  *Alpha Telecommunications, Inc. v. ANS Connect*, 8th Dist. Cuyahoga No. 90173, 2008-Ohio-3069, ¶ 9.

{¶ 9}  It is rudimentary that in order to enter a valid judgment a court must have personal jurisdiction over the defendant. *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984).  It is the plaintiff who has the burden to establish the court's personal jurisdiction over the defendant by a preponderance of evidence. *Giachetti v. Holmes*, 14 Ohio App.3d 306, 307, 471 N.E.2d 165 (8th Dist.1984).  However, when the trial court decides the issue of personal jurisdiction without a hearing, as here, the plaintiff need only make a prima facie showing of personal jurisdiction to withstand a motion to dismiss, *Giachetti* at 307, although the burden

---

[1] After the complaint was filed, Blue Marble removed the case to the United States District Court for the Northern District of Ohio based on diversity jurisdiction.  The federal court remanded the case back to the common pleas court.

remains on the plaintiff to establish personal jurisdiction by a preponderance of evidence. *State ex rel. DeWine v. 950 Group L.P.,* 2012-Ohio-3339, 977 N.E.2d 112, ¶ 15 (9th Dist.) ("[W]here the trial court decides personal jurisdiction absent an evidentiary hearing, the plaintiff continues to bear the burden of proving, in its case-in-chief at trial, existence of facts upon which jurisdiction is based by a preponderance of evidence.").

{¶ 10} Moreover, we note that when the court resolves the issue of personal jurisdiction without a hearing, the factual allegations relevant to personal jurisdiction must be construed in a light most favorable to the plaintiff and the court should resolve all reasonable competing inferences in their favor. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994). In this case, Blue Marble requested an evidentiary hearing. However, the trial court resolved the motion to dismiss without a hearing. Therefore, Mayfran is only required to make a prima facie showing of personal jurisdiction at this stage of the proceedings and the factual allegations must be construed in a light most favorable to Mayfran.

**Two-Prong Test for Personal Jurisdiction: (1) Long-Arm Statute and (2) "Minimum Contacts"**

{¶ 11} The court applies a two-prong test to determine whether it has personal jurisdiction over a defendant. "First, the court must determine whether the state's 'long-arm' statute and applicable civil rules confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment

to the United States Constitution." *United States Sprint Communications Co. v. K's Foods*, 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048 (1994).

**A. First Prong:  Long-Arm Statute**

{¶ 12} Ohio's long-arm statute, R.C. 2307.382(A)(1), and Civ.R. 4.3(A)(1) permit a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction when the cause of action arises from the nonresident defendant's "transacting any business in [the] state." *Goldstein* at 235-236.

{¶ 13} As the Supreme Court of Ohio emphasized, both the statute and the rule are broadly worded and permit jurisdiction over any defendant who is "transacting any business" in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990).  Quoting  *Black's Law Dictionary* (5th Ed.1979), the court in *Kentucky Oaks* stated the term "transact" "'means to *prosecute negotiations*; to carry on business; *to have dealings*,'" "'but it is a *broader term than the word "contract" and may involve business negotiations* which have been either wholly or partly brought to a conclusion.'" (Emphasis sic.) *Id.*  Whether a defendant has transacted any business in Ohio is determined on the particular facts of the case.  *United States Sprint Communications Co.* at 185.

{¶ 14} In *Pharmed Corp. v. Biologics, Inc.*, 97 Ohio App.3d 477, 483, 646 N.E.2d 1167 (8th Dist.1994), a Florida company negotiated with an Ohio company to sell medical beds to the Ohio company.  This court, noting the Florida defendant engaged in negotiations with the Ohio company by mail, telephone, and facsimile,

held that the defendant's conduct in negotiating and entering into a contract for the sale of the beds amounts to transacting business within the state of Ohio.

{¶ 15} Similarly here, Blue Marble engaged in negotiations with Mayfran, in Ohio, by telephone and email communication. Construing the notion of "transacting any businesses" broadly, *Kentucky Oaks*, we conclude, as the trial court did, that Blue Marble's contractual dealing with Mayfran in Ohio constituted "transacting any business" in Ohio within the meaning of R.C. 2307.382(A)(1) and Civ.R. 4.3. The trial court is authorized to exercise personal jurisdiction over Blue Marble under the first prong of the personal jurisdiction analysis.[2]

## B. Second Prong: "Minimum Contacts"

{¶ 16} Even when a state's long-arm statute authorizes personal jurisdiction over a nonresident defendant, personal jurisdiction of state courts is limited by the Due Process clause of the Fourteenth Amendment. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. ___, 137 S.Ct. 1773, 1779, 198 L.Ed.2d 395 (2017). Under due process, a court may assert personal jurisdiction over a nonresident defendant only if the defendant has certain "minimum contacts" with the forum state such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

---

[2] On appeal, Blue Marble states it does not agree with the trial court's ruling regarding the first prong, yet it presents no argument challenging the ruling.

{¶ 17} When considering the "minimum contacts" test, we first note that personal jurisdiction can be either general or specific, depending on the nature of the contacts the defendant has with the forum state. General jurisdiction is proper where a defendant's contacts with the forum state are of a continuous and systematic nature as to permit the state to exercise personal jurisdiction even if the suit is unrelated to the defendant's contacts with the state. Specific jurisdiction applies when a state exercises personal jurisdiction in a suit arising out of the defendant's contacts with the state. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 46-47. It is undisputed the personal jurisdiction in this case involves specific jurisdiction.

{¶ 18} When evaluating whether subjecting an out-of-state defendant to jurisdiction would violate the notions of fair play and substantial justice, we apply "a constitutional standard defined in the broadest terms of 'general fairness' to the defendant." *S. Machine Co., Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381, 382 (6th Cir.1968). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

{¶ 19} Over the years, the courts have elaborated on the "minimum contacts" test set forth in *Internatl. Shoe Co.* First, the nonresident defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the defendant's acts or consequences caused by

the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Machine Co.* at 381. The first two requirements concern whether the non-resident defendant had "minimum contacts" with the forum state. The third requirement ensures that the contact is sufficiently substantial to make the jurisdiction over the defendant reasonable. We analyze these requirements in turn.

### a. "Purposeful Availment" and "Arising From" Requirements

{¶ 20} "Purposeful availment" occurs when "the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state.'" (Emphasis sic.) *Kauffman,* 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 51, quoting *Burger King* at 475. This requirement ensures that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* quoting *Burger King* at 475. Among the considerations for the "purposeful availment" requirement is whether the nonresident defendant has created continuing obligations between himself and residents of the forum. *Goldstein,* 70 Ohio St.3d 232, 236, 638 N.E.2d 54, at 237.

{¶ 21} As for the "arise from" requirement, it simply ensures that "a defendant's contacts with the forum state are related to the operative facts of the controversy." *Kauffman* ¶ 70, citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996). This element only requires that the cause of action have a

substantial connection with the defendant's activities in the forum state. *Kauffman* at ¶ 70

### b. Analysis of "Purposeful Availment" and "Arising From" in this Case

{¶ 22} In arguing that it did not purposefully avail itself the privilege of acting in Ohio, Blue Marble emphasizes its lack of physical presence in Ohio and lack of any other connection with the state of Ohio, noting that during the entire course of their relationship, Blue Marble was present in Ohio once when its president Robinson visited Mayfran sometime in 2017 on his way to a family funeral in Pennsylvania.

{¶ 23} In modern commerce, interstate contracts are often negotiated and executed primarily through email communication and other electronic media. Regarding a nonresident defendant's lack of physical presence in the forum state, the United States Supreme Court has long rejected the notion that physical contacts are required for purposes of "minimum contacts."  It stated:

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposely directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King,* 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

{¶ 24} In *Ricker v. Fraza/Forklifts of Detroit*, 160 Ohio App.3d 634, 2005-Ohio-1945, 828 N.E.2d 205 (10th Dist.), an Ohio consultant sued a Michigan

company for a breach of contract. The Tenth District, applying the *Burger King* rationale, determined that the Ohio court could exercise personal jurisdiction over the Michigan defendant, despite the defendant's lack of physical presence in Ohio. The court reasoned that the Michigan company had a continuous business relationship with the plaintiff over a significant period of time and that electronic and telephone communication was frequently addressed to the plaintiff's office in Ohio. *Id.* at ¶ 18.

{¶ 25} Similarly, Blue Marble's lack of physical presence in Ohio is not dispositive on the issue of personal jurisdiction and does not preclude jurisdiction. Rather, we look to the scope and nature of the parties' contractual activities. Blue Marble argues that the mere purchase of goods by an out-of-state buyer is insufficient to establish that the buyer purposefully availed himself of the privilege of acting in the forum state. Blue Marble is correct that the mere existence of a contract for a single purchase of goods involving an Ohio seller may not in itself establish the requisite "minimum contacts." *See Austin Miller Am. Antiques, Inc. v. Cavallaro*, 10th Dist. Franklin No. 11AP-400, 2011-Ohio-6670, ¶ 10 (there was no minimum contacts for the trial court to exercise jurisdiction over a nonresident defendant who purchased a chandelier from an Ohio seller — the parties contracted for a single consumer purchase and the contract did not impose ongoing obligations to be performed in Ohio).

{¶ 26} This case, however, goes beyond a single purchase of goods from an Ohio company. The transaction here involved extensive negotiations over almost

two years between Blue Marble and an Ohio company, resulting in the execution of ten contracts totaling more than $8 million in contract price, under which the Ohio company would deliver to Blue Marble 50 pieces of equipment, many of which designed and manufactured in Ohio specifically for Blue Marble.

{¶ 27} In other words, unlike *Austin Miller*, this case does not simply involve a transaction where a nonresident defendant purchased some goods from Ohio. Rather, Blue Marble entered into multiple contracts with an Ohio company after extensive negotiations over a significant period of time. Given the nature and scope of the parties' contractual relationship, we cannot say Ohio's jurisdiction over Blue Marble was a result of Blue Marble's random, fortuitous, or attenuated contacts with Ohio. Rather, the nature and scope of the parties' contractual relationship demonstrates a prima facie showing that Blue Marble purposefully availed itself of the privilege of acting in Ohio, albeit through nonphysical contacts.

{¶ 28} Blue Marbles cites *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014), for the proposition that the plaintiff cannot be the only link between the defendant and the forum state and that a defendant's relationship with the plaintiff, standing alone, is insufficient basis for jurisdiction. In *Walden*, a Georgia Drug Enforcement Administration agent searched two Nevada residents passing through a Georgia airport and seized cash from them. The Nevada residents later sued the Georgia agent in a federal court in Nevada, alleging the agent falsified an affidavit to support the forfeiture of their money. The United States Supreme Court found that the Nevada court lacked personal jurisdiction over the Georgia

agent, reasoning that the "minimum contacts" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" and that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. The court concluded the Georgia defendant's conduct occurred entirely in Georgia and the mere fact that his conduct affected the plaintiffs who resided in Nevada does not suffice to authorize jurisdiction. *Id.* at 291.

{¶ 29} The circumstances in *Walden* are in sharp contrast to the instant case. In *Walden*, the claim of personal jurisdiction was based on a random, fortuitous, and attenuated contact the nonresident made with the forum state by interacting with persons affiliated with that state. *Id.* at 286. Here, what connects Blue Marble to Ohio is not Mayfran's residency in Ohio alone, but rather Blue Marble's activities in Ohio: engaging in significant contractual activities in Ohio (albeit by way of email and telephone communication) over an extensive period of time.

{¶ 30} Turning now to the "arising from" requirement, this is a lenient requirement and plaintiff simply needs to show the defendant's contacts with the forum state are related to the "operative facts of the controversy." *Kauffman,* 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 70. In this case, once we have determined that a prima facie showing has been made that Blue Marble had "minimum contacts" with Ohio based on its extensive contractual activities with an Ohio company, it follows that the operative facts of the controversy in this breach of contract action are related to those contacts.

{¶ 31} When analyzing this requirement, the trial court here, in considering whether the operative facts of the controversy "arise from" the defendant's contacts with Ohio, reasoned that Blue Marble's *failure to pay* had no direct connection to Ohio and therefore did not "arise from" its contacts with Ohio. The trial court's reasoning is misguided. The operative facts here are the parties' contractual activities, not the defendant's nonpayment.

{¶ 32} Given the course of dealing between Blue Marble and Mayfran, we conclude a prima facie showing has been made that Blue Marble purposefully availed itself of the privilege of acting in Ohio and the cause of action arose from its activities in Ohio. The first two requirements of the "minimum contacts" test are satisfied in this case.

c. **Reasonableness**

{¶ 33} The last requirement of the "minimum contacts" test concerns whether the acts of the nonresident defendant or consequences caused by that defendant in the forum state had a substantial connection with the forum state to make the exercise of jurisdiction reasonable. When the first two requirements of the "minimum contacts" test are met, there is generally an inference that the exercise of personal jurisdiction over the nonresident defendant is reasonable. *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903-904 (6th Cir.2017). Several factors are relevant here: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in

securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir.2005).

{¶ 34} Regarding the burden on the defendant, this court has observed that "it has long been recognized that modern transportation and communications have made it much less burdensome for a party to defend a lawsuit in a state where he engages in economic activity." *Pharmed Corp.,* 97 Ohio App.3d at 485, 646 N.E.2d 1167, citing *Kentucky Oaks*, 53 Ohio St.3d at 75, 559 N.E.2d 477. Here, while the equipment at issue and some witnesses are located in California, an equal number (or more) of witnesses (Mayfran's employees involved in this extensive project) are located in Ohio. The burden on Blue Marble in litigating this matter in Ohio, relative to the burden on Mayfran in litigating the matter in California, does not necessarily weigh against jurisdiction.

{¶ 35} Regarding California's and Ohio's interests in adjudicating this matter, the trial court below emphasized that Blue Marble operates the mattress recycling facilities under the California's mattress recycling statute and therefore California has a greater interest in adjudicating the instant dispute. We disagree. Blue Marble has not demonstrated any impact of California's mattress recycling statute in this contract action. Rather, the dispute here involves Blue Marble's contracts for equipment with Mayfran and its alleged breach of contract. Ohio has a strong interest in adjudicating a suit brought by an Ohio resident and in seeing that its residents get the benefit of their bargains. *Barnabas Consulting Ltd. v. Riverside Health Sys.*, 10th Dist. Franklin No. 07AP-1014, 2008-Ohio-3287, ¶ 26.

Accordingly, we are unable to conclude an Ohio court's exercise of personal jurisdiction over Blue Marble is unreasonable.

{¶ 36} Based on the particular facts of this case, we conclude that the trial court's assertion of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Mayfran has met its prima facie burden of establishing the trial court's personal jurisdiction over Blue Marble under Ohio's long-arm statute and the "minimum contacts" test. Our decision does not reach a determination whether Mayfran established personal jurisdiction by a preponderance of the evidence because the only issue before the court is the trial court's order dismissing this matter pursuant to Civ.R. 12(B).

{¶ 37} Finally, regarding the existence of a forum selection clause, it is disputed by the parties whether there is a valid forum selection clause in the parties' contracts. In this connection, we note that a party may always waive the due process rights and consent to personal jurisdiction. One way to consent to personal jurisdiction of a particular court is through a forum selection clause. *See Intrasee, Inc. v. Ludwig*, 9th Dist. Lorain Nos. 10CA009916 and 11CA010024, 2012-Ohio-2684, ¶ 7. In this case, we do not need to reach the issue of whether a valid forum selection clause existed, given our conclusion that the exercise of personal jurisdiction by an Ohio court does not violate Blue Marble's due process rights.

{¶ 38} The trial court's judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, A.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

MARY EILEEN KILBANE, A.J., DISSENTING:

{¶ 39} I respectfully dissent. I would affirm the trial court's judgment granting Blue Marble's motion to dismiss for lack of personal jurisdiction. I agree with the trial court in that Mayfran failed to demonstrate "minimum contacts" by Blue Marble.

{¶ 40} With regard to purposeful availment, the first requirement of the minimum contacts test, I respectfully disagree from the majority opinion's finding that Blue Marble's contractual relationship and email and telephone communications connect it to Ohio.[3] I would find that the parties' course of dealings

---

[3] I would also find the majority's reliance on *Ricker*, 160 Ohio App.3d 634, 2005-Ohio-1945, 8285 N.E.2d 205, factually distinguishable. In *Ricker*, the court presumed that the Michigan company initiated the parties' contacts in Ohio.

demonstrate the opposite — that Blue Marble's contact with Mayfran is fortuitous and random and, as a result, Blue Marble did not purposefully avail itself of the privilege of acting in Ohio.

{¶ 41} Blue Marble did not reach into Ohio to solicit business from Mayfran. Rather, Blue Marble happened to meet Kim Jaker of H. West Equipment, Inc. (Mayfran's California-based subcontractor) at a conference in Las Vegas, Nevada. Kim Jaker then connected Blue Marble with Mayfran. Thereafter, Mayfran traveled to California to secure Blue Marble's business. Mayfran then assigned a California-based regional manager to handle the account. Blue Marble communicated with the Mayfran representative in southern California for all of the relevant contracts at issue. The purpose of these contracts was to facilitate Blue Marble's business of recycling mattresses in California under California's Used Mattress Recovery and Recycling Act.

{¶ 42} Based on the foregoing, I would find that Blue Marble did not reach out to Ohio and create a connection in a way that would satisfy the purposeful availment requirement.

{¶ 43} As for the "arising from" requirement, the operative facts of the controversy must arise from the defendant's contacts with the state. *Kauffman*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 70, citing *CompuServe, Inc.*, 89 F.3d at 1267. In the instant case, the operative facts of this controversy are that

Additionally, the Michigan company submitted a physical payment in the plaintiff's Ohio office. These facts are not present in the instant case.

Blue Marble failed to pay for goods and services forming the basis for breach of contract and unjust enrichment claims. Blue Marble's failure to pay, however, has no direct connection to Ohio and does not arise from Blue Marble's contact with the state. The money is owed for goods and services provided in California. Without such contacts, Mayfran cannot establish the "arising from" requirement of the minimum contacts test.

{¶ 44} With regard to the last requirement, substantial connection, courts may evaluate a variety of factors, including the forum state and plaintiff's interests in proceeding in the chosen forum. Here, the trial court took judicial notice of the fact that Blue Marble was solely interested in conducting business in California under California law. The state of California has a far greater interest in adjudicating this dispute based upon the law it has enacted. Moreover, it is clear that Blue Marble is based and only conducts business in California. Its facilities are in California, and the services Mayfran performed were rendered in California. Aside from Mayfran's Ohio-based witnesses, all of the evidence is located in California, including Mayfran's California regional manager and its California-based subcontractor, as well as the equipment itself, which is the underlying basis of this dispute.

{¶ 45} For these reasons, I would find that exercising jurisdiction over Blue Marble would be random and arbitrary and would violate the notions of fair play and substantial justice.

{¶ 46} Accordingly, I would affirm the trial court's judgment granting Blue Marble's motion to dismiss for lack of personal jurisdiction.